RECEIVED
FEB 28 2018
AT 8:30_____M
WILLIAM T. WALSH
CLERK

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re RICHARD ANNUNZIATA, <br><br> Debtor. | Bankruptcy Action No. 15-28996 (CMG) |
| RICHARD ANNUNZIATA, <br><br> Plaintiff, <br><br> v. <br><br> PUTNAM AT TINTON FALLS, LLC et al., <br><br> Defendants. | Adversary Proceeding No. 15-2272 (CMG) |
| RICHARD ANNUNZIATA, <br><br> Appellant, <br><br> v. <br><br> NANCY ISAACSON, CHAPTER 11 TRUSTEE, UNITED STATES TRUSTEE, et al., <br><br> Appellees. | Civil Action No. 17-1864 (MAS) <br><br> **ON APPEAL FROM THE BANKRUPTCY COURT OF THE DISTRICT OF NEW JERSEY** <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter[1] comes before the Court on Appellant Richard Annunziata's ("Debtor") appeal from: (i) the Bankruptcy Court's Amended Order approving the bankruptcy settlement, dated

---

[1] This is a consolidated matter, originally proceeding under Civil Action Nos. 17-1864 and 17-1866. Plaintiff filed identical appeals in the main bankruptcy case *In Re: Richard Annunziata*, Case No. 15-28996 ("Main Case") and the adversary proceeding *Annunziata v. Putnam at Tinton Falls*, Adv. No. 15-02272 ("Adversary Proceeding"). The Court consolidated the appeals on September 1, 2017. (ECF No. 21.)

December 28, 2016 ("Settlement Order," Bankr. ECF No. 324);[2] and (ii) the Bankruptcy Court's denial of Debtor's Motion for Reconsideration, dated March 9, 2017 (the "Reconsideration Order," Bankr. ECF No. 361) (collectively, "Bankruptcy Orders"). (Notice of Appeal, ECF No. 1.) The United States Trustee, the Chapter 11 Trustee, and Putnam at Tinton Falls, LLC ("Putnam") each filed opposition. (ECF Nos. 16, 17, 18.) After careful consideration and for the reasons set forth below, the Court denies Debtor's appeal and affirms the Bankruptcy Orders.

I. **Background**

On February 6, 2015, Debtor filed for Chapter 13 bankruptcy in the Southern District of New York. (Ch. 11 Trustee's Br. 20 n.5, ECF No. 17.) The proceeding was converted to a Chapter 11 bankruptcy and transferred to the District of New Jersey. (Bankr. ECF Nos. 48, 125, 128.) Debtor then filed an adversary proceeding against Putnam under docket number 15-2272. The adversary proceeding sought judgment relating to two underlying escrow accounts, discussed in detail below.

A. Escrow I

By way of background, Debtor was a part owner of Putnam. (U.S. Trustee's Br. 5, ECF No. 16.) Putnam, through Debtor, cast a winning bid at a bankruptcy auction for ninety-eight lots of land in Tinton Falls. The purchase price of $8,000,000 was paid by Gino and Family LLC, an entity controlled by Gino Palazzolo. (Ch. 11 Trustee's Br. 11.) Debtor and Palazzolo thereafter had a falling out and Debtor was removed from Putnam's management. (*Id.* at 12.) Debtor then instituted an action in the Superior Court of New Jersey, captioned *Richard Annunziata v. Gino Palazzolo, et al.*, docket no. C-125-10 ("Palazzolo Case"). The parties were sent to arbitration,

---

[2] Citations to the Bankruptcy Court record refer to the Main Case docket unless otherwise indicated. Where identical documents were filed in both the Main Case and the Adversary Proceeding, the Court omits duplicative citations to the Adversary Proceeding.

2

where the arbitrator found that Debtor had no interest in Putnam. (*Id.*) The parties, however, subsequently agreed to settle the dispute by payment from Putnam to Debtor of $900,000 in exchange for Debtor's release of any purported ownership interest in Putnam. (*Id*; U.S. Trustee's Br. 5.) After a subsequent dispute over the settlement—in which Debtor claimed his lawyer was not authorized to enter into the settlement—the arbitrator held a hearing, determined that Debtor was bound to the settlement and had no further interest in Putnam, and ordered Putnam to deposit the settlement amount with Putnam's attorney, Edward McKenna. (Ch. 11 Trustee's Br. 12-13.) This deposit is the subject of the first escrow account at issue ("Escrow I"). The arbitrator also ordered $100,000 to be paid from Escrow I to Debtor's professionals and permitted "all attorneys and other professionals" to place additional liens on the escrow prior to its release. (*Id.* at 14.)

Debtor then appealed from the arbitrator's order. On April 27, 2012, Judge Cavanaugh, sitting in the Superior Court of New Jersey, confirmed the arbitrator's decision. (*Id.* at 13.) Judge Cavanaugh also ordered that Mr. McKenna release additional specified disbursements from Escrow I to Debtor's attorneys. (*Id.* at 14-15.) Debtor then filed a certification to the New Jersey Supreme Court, which was denied. (*Id.* at 13.)

A few months later in a companion case between Putnam and Debtor, captioned *Putnam at Tinton Falls, LLC v. Richard Annunziata*, docket number MON-L-1900-12 ("Putnam Case"), discussed in more detail below, Judge Quinn, sitting in the Superior Court of New Jersey, ordered Mr. McKenna to deposit the remaining escrow funds with the Superior Court. (*Id.* at 15.) Despite the court's order, Escrow I was never actually deposited with the Superior Court and instead remained with Mr. McKenna. (*Id.*; Debtor's Appeal Br. 12, ECF No. 12.) McKenna then apparently mistakenly disbursed the funds from Escrow I, but this was later corrected and the Chapter 11 Trustee asserts that all of the funds are accounted for, as the $625,900 turned over to

the Chapter 11 Trustee "squares with the monies remaining in [Escrow I]." (Ch. 11 Trustee's Br. 16.)

B.     Escrow II

Also relevant to this appeal is money in a second escrow ("Escrow II"). This escrow is the result of an agreement between the parties in a separate litigation, *Robert Ross v. Richard Annunziata, Putnam at Tinton Falls*, pending in the Superior Court of New Jersey, Monmouth County, under docket number L-1359-09 ("Ross Litigation"). (*Id.* at 17.) In the Ross Litigation, plaintiff Ross claimed that he had an ownership interest in Putnam pursuant to an agreement plaintiff made with Debtor. (*Id.*) The underlying claims involved a *lis pendens* claim against the property at issue. (*Id.*) Around May 2011, the Superior Court of New Jersey granted summary judgment in favor of defendants. (Respondent's Appendix ("Ra") 225, ECF No. 17-1.) Plaintiff appealed. In an effort to allow property sales to close while the plaintiff appealed the Superior Court's decision, the parties agreed that a portion from the closing proceeds of each sale would be deposited into Escrow II, which would be held by one of Debtor's former attorneys, Mr. Kalebic, and that any judgment in favor of Ross would be satisfied through the escrow account. (Ch. 11 Trustee's Br 17-18.) The parties stipulated that the funds would "not be disbursed until a final decision is rendered by the Appellate Court or any remand after the Appeal." (Ra226.) The parties did not file the stipulation with the court. (Ra225.)

On February 29, 2012, the Appellate Division affirmed the Superior Court's ruling. (Ra226.) Before any funds were disbursed, Debtor wrote to Mr. Kalebic and objected to the release of funds. (*Id.*) Putnam filed a motion to enforce litigant's rights, Debtor opposed, and Mr. Kalebic filed a cross-motion to deposit the funds with the court. (*Id.*) The Court denied both motions, finding that "a final judgment has already been entered . . . . There are no litigant's rights to enforce.

4

This Court did not order or know anything about an escrow. . . . This determination is an entirely new question of law . . . [and] this Court will not adjudicate this issue as a motion under this docket number." (Ra227-28.) Mr. Kalebic then filed a separate action in which Judge Kilgallen granted leave to deposit Escrow II, in the amount of $1,013,350.17, with the court. (Ra234-35.) The order stated that the money would remain deposited with the Court until issuance of a final unappealable order in two pending matters: the Palazzolo Case and the Putnam Case. (Ch. 11 Trustee's Br. 18-19; Ra234-35.)

The Palazzolo Case was later resolved with an unappealable order after Judge Cavanaugh's confirmation of the arbitrator's order and the New Jersey Supreme Court's refusal to hear the case, as previously discussed. The Putnam Case is a lawsuit by Putnam against Debtor alleging that Debtor misrepresented that he owned Putnam in order to obtain a loan, and used Putnam's property as collateral, after the arbitrator already determined that Debtor had no interest in Putnam. On January 23, 2013, a judgment was entered against Debtor for $1.5 million dollars in the Putnam Case. (Ch. 11 Trustee's Br. 19.) On December 16, 2014, Debtor's counterclaims and defenses were stricken in the Putnam Case, resolving the action. On January 21, 2015, however, Debtor appealed the decisions in the Putnam Case. A few weeks later, on February 6, 2015, Debtor filed his Chapter 11 bankruptcy, which stayed the appeal. (*Id.* at 20.) The Bankruptcy Court later granted relief from the stay to allow Debtor to pursue the appeal. (Dec. 13, 2016 Tr. 52:24-53:8, Bankr. No. 15-2272, ECF No. 223 ("Dec. 13, 2016 Tr.").)

C.    **Bankruptcy Proceedings**

In the adversary proceeding, Debtor sought an adjudication that Escrow I was property of the bankruptcy estate and to enjoin disbursement of the funds in Escrow II. (U.S. Trustee's Br. 7.) On March 31, 2016, Putnam moved to replace Debtor as a debtor in possession with a Chapter 11

trustee. (*Id.* at 7-8.) Putnam's request was granted and the Acting United States Trustee appointed Nancy Isaacson as the Chapter 11 Trustee. (*Id.* at 8.)

On August 1, 2015, the Chapter 11 Trustee filed a motion to approve compromise between Trustee and Putnam with respect to the two escrows. (Ch. 11 Trustee's Br. 9.) The same motion was filed in both the main case and the adversary case. (Dec. 13, 2017 Tr. 47:8-11.) Under the terms of the settlement, all funds remaining in Escrow I and $25,000 of the funds in Escrow II would become property of the bankruptcy estate. (U.S. Trustee's Br. 8.)

On August 23, 2016, Debtor filed a *pro se* certification objecting to the settlement. (Ra12-13.) Debtor claimed a full accounting was needed on money in Escrow I and that, as to Escrow II, Debtor's "crossclaims are on appeal" and "if [he] win[s] the appeal the million dollars would come to [him]." (Ra13.) On December 8, 2016, Debtor, through his counsel, filed another objection to the settlement motion. (Ra30.) In the three-page submission, unsupported by any record citations or reasoned legal analysis, Debtor accused the Chapter 11 Trustee of committing "rank bankruptcy fraud," "lying to the Court to deceive creditors," and asked the Bankruptcy Court to "deny the settlement as falling below the lowest range of reasonableness" and "being rife with fraud." (Ra32.)

On December 13, 2016, the Bankruptcy Court held a hearing on the Chapter 11 Trustee's motion to approve a settlement with Putnam. (Bankr. ECF No. 315.) Debtor argued that the settlement should not be approved because the Debtor, not Putnam, was entitled to the money in Escrow II. (Dec. 13, 2016 Tr. 31:12-32:18.) The Chapter 11 Trustee clarified the issues surrounding the escrows and argued that the settlement was reasonable because Debtor had no interest in the money from Escrow II. (*Id.* at 32:6-37:1.) After considering arguments for and against the settlement, Judge Gravelle approved the settlement, finding that "[s]ettlement would

6

essentially resolve lengthy and contentious litigation between Putnam and [D]ebtor." (*Id.* at 47:14-15.) Judge Gravelle's oral decision on the record recited the relevant facts and procedural history. (*Id.* at 47:23-56:21.) In discussing Escrow II, Judge Gravelle found that the final unappealable order in the Palazzolo Case that determined Debtor has no interest in Putnam undermines Debtor's arguments that he has an interest in Escrow II. (*Id.* at 59:19-60:8.) Further, even if Debtor is successful on appeal in the Putnam Case, that does not mean he has an interest in Escrow II. Even if the Superior Court decision is vacated on appeal, Debtor would not automatically prevail—the case would require further litigation through trial or dispositive motions. (*Id.* at 59:11-18.) In exploring the possibilities related to the Putnam Case and the Trustee's decision not to oppose Debtor's request to pursue the Putnam Case appeal, Judge Gravelle found the Trustee's position "eminently reasonable." (*Id.* at 60:9-61:9.)

As to the legal basis for approving the settlement, in a well-reasoned legal analysis, Judge Gravelle set forth the factors established by the Third Circuit in *Myers v. Martin (In Re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) and applied the facts of this case. Judge Gravelle noted that the most significant *Martin* factor is the paramount interest of the creditors (Dec. 13. 2016 Tr. 61:16-18) and found that the proposed settlement "unquestionably benefits creditors" (*id.* at 62:6). Judge Gravelle found that the settlement would provide a return to the creditors and continue to protect them, as Debtor's potential counterclaim against Putnam in the Putnam Case remains an asset of the estate. (*Id.* at 62:12-15.) Judge Gravelle also found that "since the debtor has no ownership interest and no claim to the $1 million escrow . . . the payment of $25,000 to release no claim is a pretty good settlement." (*Id.* at 62:17-19.) For all of these reasons, Judge Gravelle approved the compromise between Putnam and the Trustee. (*Id.* at 62:20-21.) The Court entered

7

an order, which it amended on December 28, 2016, and entered the amended order in both the Main Case and the Adversary Proceeding. (Bankr. ECF No. 324.)

On January 18, 2017, Debtor filed a motion for reconsideration, which was amended on February 7, 2017. (Bankr. ECF Nos. 330, 340, 341.) Debtor's submission argues that the Trustee "made no showing with respect to Escrow II," "the [Superior Court] settlement orders are not clear with respect to Escrow I," "the settlement for Escrow II should not be granted because of the egregious misappropriation and mishandling of Escrow I," and that the Bankruptcy Court "ignored the precedent [sic] standard set for determination [of] whether to approve a settlement." (*See* Amended Motion for Reconsideration, Bankr. ECF No. 340.) On March 7, 2017, the Bankruptcy Court held a hearing on Debtor's motion. After hearing the parties' arguments, Judge Gravelle denied the motion for reconsideration and set forth the reasoning on the record. (Mar. 7, 2017 Tr. 25:16-26:6, ECF No. 369.) The Bankruptcy Court analyzed Debtor's arguments in light of the standard for reconsideration and found that Debtor failed to set forth a valid legal basis for the motion to be granted. Judge Gravelle found that none of the information provided by Debtor constituted new evidence, Debtor failed to cite any change in controlling law or clear error of law, and the motion was "an attempt to reargue the underlying motion, after failing to file competent opposition originally." (*Id.* at 26:18-24.)

Nevertheless, Judge Gravelle analyzed the additional information Debtor provided in support of the motion and found that the settlement should still be approved. (*Id.* at 26:25-27:6.) Judge Gravelle specifically addressed Debtor's argument that certain funds were inappropriately missing from Escrow I. Judge Gravelle found that the "theory borders on frivolous," was "troubling," and "was eviscerated by the Trustee's reply . . . outlining the authority for all the remaining payments." (*Id.* at 43:19-25.) In a thorough decision, Judge Gravelle again recited the

factual and procedural history (*id.* at 27:7-32:16), reviewed the applicable legal standard (*id.* at 32:14-34:5), analyzed Debtor's submissions (*id.* at 34:6-37:3), and set forth the reasons supporting the Bankruptcy Court's approval of the settlement (*id.* at 37:4-47:5).

Debtor now appeals from both the order approving settlement and the order denying the motion for reconsideration. In support of his motion, Debtor sets forth essentially the same arguments presented to the Bankruptcy Court initially and on reconsideration. Debtor's Statement of Issues for this appeal includes four questions. (ECF No. 3.) Debtor's brief, however, raises six issues for review, none of which exactly match the issues previously raised.[3] The crux of Debtor's

---

[3] Debtor's "Statement of Issues to Be Presented on Appeal" contains the following issues:

1. Did the Bankruptcy Court err when it granted the motion of the Chapter 11 Trustee pursuant to Fed. R. Bankr. Pro. 9019 approving the settlement of the issues between the parties herein when the Trustee accepted $25,000, at the lowest range of reasonableness, in exchange for the payment of over $1 million to Putnam at Tinton Falls, LLC ("Putnam").
2. Did the Bankruptcy Court err when it granted the motion approving the settlement between the Trustee and Putnam when the parties provided no basis, evidence or merits of such settlement, the parties provided no legal analysis in support thereof, and indeed, no factual or legal basis for such settlement has been provided.
3. Did the Bankruptcy Court err when it approved a settlement of a motion for reconsideration filed by Putnam with respect to a motion for summary judgment as part and parcel of the purported settlement between the Trustee and Putnam when the motion for summary judgment was frivolous on its face.
4. Did the Bankruptcy Court err when it approved the settlement between the Trustee and Putnam when the Court failed to consider that the amounts certified by the Trustee in the account holding such funds by Putnam were in error.

(ECF No. 3 (verbatim).)

Debtor's brief includes the following "Statement of Issues Presented for Review":

1. Whether the Bankruptcy Judge abused her discretion, when she granted the settlement between Putnam at Tinton Falls and the Trustee; even though there were substantial questions of fact presented to why no settlement should be approved?
2. Whether in fact The Debtor is correct in the fact that there is money still due to the state for Escrow I?
3. Whether it was correct to approve the settlement, despite Debtor proving with evidence that there were double payments, and monies owed to Escrow I?

argument is that "Escrow I was improperly accounted for, and Escrow II should not have been given away." (Debtor's Appeal Br. 7.)

## II. Jurisdiction and Standard of Review

The parties dispute the appropriate standard of review. In a confusing claim, Debtor argues that the Court should apply a *de novo* review to "a district court's ruling on a motion to dismiss for failure to state a claim." (Debtor's Appeal Br. 8-9.) The U.S. Trustee and the Chapter 11 Trustee argue that this is incorrect and the appropriate standard of review of an order approving settlement is abuse of discretion. (Ch. 11 Trustee's Br. 4 ("This statement is both puzzling and wrong. This appeal involves the review of a bankruptcy Court order approving settlement . . . . The District Court reviews such approvals for abuse of discretion."); U.S. Trustee's Br. 3.)

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. *See* 28 U.S.C. § 158(a) (2010). The standard of review for bankruptcy court decisions "is determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005). Findings of fact are reviewed under a clearly erroneous standard, where factual findings may only be overturned "when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Cellnet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Legal conclusions,

---

4. Whether in fact Putnam is entitled to Escrow II, even though they and the trustee have not presented substantial evidence to prove ownership, despite numerous previous rulings that denied them ownership?
5. Whether the Bankruptcy Judge was allowed to granter Escrow II, even though Judge Kilgallen ruled that once there is a final unappealable decision then either party can make an application to the court for the proceeds?
6. Whether the bankruptcy Judge abused her discretion, when she granted the proceeds of Escrow II without a full hearing to determine whether in fact Putnam is the true owner?

(Debtor's Appeal Br. 4 (verbatim).)

on the other hand, are subject to *de novo,* or plenary, review by the district court. *See Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir. 1997). If it is alleged that the bankruptcy court abused its discretionary authority, the district court may only inquire whether the bankruptcy court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Int'l Union, UAW v. Mack Trucks, Inc.,* 820 F.2d 91, 95 (3d Cir. 1987).

Here, Debtor appeals from the District Court's approval of the settlement, which is reviewed for abuse of discretion. *See In Re Martin,* 91 F. 3d at 393. A motion for reconsideration is also reviewed for abuse of discretion. *See Ahmed Amr v. Greenberg Traurig LLP (In re Syntax-Brillian Corp.),* No. 13-337, 2016 WL 7177615, at *28-29 (D. Del. Dec. 9, 2016)(citing *Lazaridis v. Wehmer,* 591 F.3d 666, 669 (3d Cir. 2010)). The Court, therefore, reviews the Bankruptcy Court Orders for an abuse of discretion.

### III. Discussion

As an initial matter, Debtor's submissions to the Court are procedurally deficient and violate several rules governing appellate practice. Debtor's brief does not contain proper citations to the record and makes arguments about documents outside of the record entirely. In addition, Debtor failed to include the transcripts of the Bankruptcy Court's decisions he is appealing, and argues issues that were not raised in the initial statement of issues presented for appeal. Debtor also failed to comply with the rules governing the table of contents, table of authorities, appendix, statement of case, and certificate of compliance. *See e.g.,* Fed. R. Bankr. P. 8014(a)(2)-(3), (6), (8), (10), 8015 (a)(7)(C), 8015(b). Debtor's violations of the rules alone constitute a basis to deny the appeal. *See Kusher v. Winterthur Swiss Ins. Co.,* 620 F.2d 404, 406-407 (3d Cir. 1980). The Court, however, will nevertheless address the merits of the appeal and finds that the appeal should be denied.

The issues on appeal are whether the Bankruptcy Court abused its discretion in: (1) approving the settlement between Putnam and the Chapter 11 Trustee; or (2) denying the motion for reconsideration. Settlement compromises are generally favored in bankruptcy. *In re Wash. Mut., Inc.*, 442 B.R. 314, 327-28 (Del. Bankr. 2011). The approval or rejection of a settlement is committed to the sound discretion of the bankruptcy court. *Id.* (citing *Key3Media Grp., Inc. v. Pulver.com Inc. (In re Key3Media Grp. Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005)). In evaluating a proposed settlement, the Bankruptcy Court must consider whether the settlement is "fair, reasonable, and in the best interest of the estate." *In re Wash. Mut., Inc.*, 442 B.R. at 328 (citing *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997). A settlement does not need to be the "best possible compromise" available, it only needs to be above "the lowest point in the range of reasonableness." *In re Wash. Mut., Inc.*, 442 B.R. at 328 (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004) (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999)).

Debtor's argument on appeal does not explain how the Bankruptcy Court abused its discretion. Instead, Debtor recites the same arguments about the reasons he believes the settlement should not have been approved in the first instance. Essentially, Debtor argues that he believes there may be money missing from Escrow I even though the "accounting [] on the surface level looks like it accounts for all [of] the money" (Debtor's Appeal Br. 12), Escrow II should not be "given away" (*id.* at 19-24), and the Bankruptcy Court cannot issue an order relating to Escrow II because it would violate the *Rooker-Feldman* doctrine (*id.* at 15-19).

The Court is not persuaded that the Bankruptcy Court abused its discretion. To the contrary, the Bankruptcy Court acted reasonably, carefully analyzed the issues, and reached an appropriate decision, which certainly falls above the lowest point in the range of reasonableness. Further, this Court agrees with the Bankruptcy Court that the *Rooker-Feldman* doctrine is not applicable. The doctrine is only implicated to bar federal jurisdiction when: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the state court judgment was rendered before the federal suit was filed; and (4) the plaintiff is inviting the court to review and reject the state court judgment. *B.S. v. Somerset Cty.*, 704 F.3d 250, 259-60 (3d Cir. 2013). Judge Kilgallen's order permitting the holder of the escrow to deposit the money with the court does not prevent the Bankruptcy Court from approving a settlement between the Trustee and Putnam that involves these funds. The Bankruptcy Court's Orders do not reject any state court order. In fact, none of the Judge Kilgallen's orders actually determine ownership of Escrow II. The fact that the order allows parties to apply for release of the funds after final resolution of the litigations does not prevent the Bankruptcy Court from approving a settlement related to these funds—especially where the issue of Debtor's purported interest in Putnam is completely resolved. The conclusion of the Palazzolo Case resulted in a finding that Debtor does not have any ownership interest in Putnam. By extension, therefore, Debtor does not have an ownership interest in Escrow II. The Putnam Case appeal will not re-litigate this ownership issue. Even if Debtor is successful on appeal and ultimately his crossclaims, it will not result in an ownership interest in Putnam or Escrow II, just a judgment against Putnam.[4]

---

[4] The Court also notes that Debtor's claim that the Bankruptcy Court cannot issue an order pertaining to Escrow II is disingenuous given Debtor's conduct in the bankruptcy. In fact, Debtor instituted the adversary proceeding for the purpose of asking the Bankruptcy Court to enjoin distributions from Escrow II. Now that Debtor disagrees with the Bankruptcy Court's decision, he argues that the Bankruptcy Court's order violates the *Rooker-Feldman* doctrine because it

The Court, therefore, finds that the Bankruptcy Court did not abuse its discretion in approving the settlement or denying the motion for reconsideration.

## IV. Conclusion

For the reasons set forth above, Debtor's appeal is denied, and the Bankruptcy Orders are affirmed. An order consistent with this Memorandum Opinion will be entered.

s/Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
UNITED STATES DISTRICT JUDGE

**Dated:** February 28, 2018

---

contradicts the state court order regarding Escrow II. Debtor apparently believes the *Rooker-Feldman* doctrine only applies to bar orders affecting Escrow II with which he does not agree.